**OWENS–CORNING FIBERGLAS CORPORATION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 14428.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 9, 1970.

Decided Dec. 14, 1970.

Frank A. Constangy, Atlanta, Ga. (Constangy & Prowell, Atlanta, Ga., on brief), for petitioner.

Allison W. Brown, Jr., Atty., N. L. R. B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Coun-

sel, and Julius Rosenbaum, Atty., N.L.R.B., on brief), for respondent.

Hugh J. Beins, Washington, D. C. (Robert M. Baptiste, on brief), for intervenor.

Before BOREMAN and BUTZNER, Circuit Judges, and THOMSEN, District Judge.

BUTZNER, Circuit Judge:

On a petition for review of a bargaining order of the National Labor Relations Board, Owens-Corning Fiberglas Co. contests the certification of the Teamsters Union as exclusive bargaining representative. We hold the union was properly certified and enforce the Board's order.

The present appeal is the latest in a long representation dispute at the Owens-Corning plant at Aiken, South Carolina. Pursuant to a petition filed on June 1, 1967, the Board conducted an election on August 15 and 16, 1967, among production and maintenance employees. Since none of the three alternatives—the Glass Bottle Blowers, the Teamsters and "no union"—received a majority of the votes, the Board ordered a runoff election between the Teamsters and "no union". In the meantime, the Teamsters charged that the company committed unfair labor practices following the inconclusive three-way election. Since the runoff election was soon to be scheduled, the union requested that the investigation of the charges be given priority, but stated that the "enclosed charges should not be viewed as blocking the runoff election."

While the unfair labor practice charges were pending, the Board conducted the first runoff election in February, 1968, resulting in a "no union" majority. After investigation of the pending charges, the Board found that the employer's conduct had interfered with the employees' free choice in that election and therefore had violated § 8 (a) (1) of the Act. 172 NLRB No. 20, 69 LRRM 1288 (1968), enforced, 407 F.2d 1357 (4th Cir. 1969). Concluding that the employer's unlawful conduct invalidated the first runoff election, the Board sustained the union's objections and ordered a second runoff election, which the Teamsters won.

The Board overruled the employer's objections to the second runoff election and certified the union. 179 NLRB No. 39, 72 LRRM 1289 (1969). Upon the company's refusal to bargain, the Board summarily found Owens-Corning in violation of § 8(a) (5) and issued a bargaining order. 181 NLRB No. 84, 73 LRRM 1447 (1970).

Owens-Corning, seeking to justify its refusal to bargain, asserts that the union's request for the Board to proceed with the first runoff election constituted a waiver of the unfair labor practices as grounds for objecting to the election. The company urges that the Board's refusal to treat the request to proceed as a waiver was an unwarranted departure from its established practice.

■ The company's position, however, appears to be based on a misunderstanding of the Board's procedure. For nearly twenty years it has been the Board's policy to consider conduct which occurs after the filing of a petition for an election as a basis for setting aside the election. The Great Atlantic & Pacific Tea Co., 101 NLRB 1118, 1120 (1952); see also NLRB Field Manual 11394 (1968). Where unfair labor practice charges based on post-petition conduct have been filed, the Board ordinarily will not require or imply a waiver from the charging party as the price for proceeding to an election. Deutsch Co. 178 NLRB No. 95, 72 LRRM 1248, 1250 (1969); American Poultry & Egg Co., 144 NLRB 650, 675 (1963); Lloyd A. Fry Roofing Co., 142 NLRB 673, 680 (1963). Since the company's unfair labor practices occurred after the first election, the Board did not depart from its policy in holding that the union's request to proceed did not waive objections to the election based on that conduct. Cf. NLRB v. National Container Co., 211 F.2d 525, 532 (2nd Cir. 1954).

Owens-Corning relies on a number of cases where, in the absence of waivers by the charging party, the Board postponed elections until unfair labor practice charges had been resolved.[1] These cases, however, are not applicable for in each of them the party charged with the unfair labor practice—and not the charging party—had requested the Board to proceed with the election. The result reached in these cases is not inconsistent with the policy that the Board followed here. In both instances the Board was concerned with preventing a party charged with unfair labor practices from affecting the timing or the outcome of an election.

 Owens-Corning also contends that the Board's procedure in this case was inequitable because it gave the union "two bites at the apple"—a chance to win the election and the possibility of invalidating it if the union lost. But this argument overlooks the Board's finding that the union's first "bite at the apple" was tainted by the company's unfair labor practice. Moreover, the rule which the company urges would force the union to choose between proceeding promptly to an election which may have been adversely affected by the company's unfair labor practices, or delaying the election until the charges are resolved. To avoid this dilemma, the board formulated its non-waiver rule in The Great Atlantic & Pacific Tea Co., 101 NLRB 1118, 1120 (1952). In the case before us, where there had already been one inconclusive election and substantial delay, we find no fault with the Board's decision to conduct the first runoff election without first resolving the unfair labor practice charges. The Board's exercise of discretion was well within its authority over the timing and conduct of elections which has long been recognized by the courts. See NLRB v. Waterman Steamship Corp., 309 U.S.

206, 226, 60 S.Ct. 493, 84 L.Ed. 704 (1940).

The employer also alleges it was denied due process because the Board did not hold a hearing in the representation case to allow the company to rebut the union's objections to the first runoff election. However, the conduct for which the Board sustained the union's objections was precisely the same as that fully litigated in the unfair labor practice proceedings, Owens-Corning Fiberglas Corp. v. NLRB, 407 F.2d 1357 (4th Cir. 1967). Since the company's unlawful interference with the employees' free choice in the first runoff election violated § 8(a) (1), a fortiori, the conduct warranted the setting aside of the election. Cf. Dal-Tex Optical Co., 137 NLRB 1782, 1786 (1962). The Board was under no obligation to hold another hearing.

The employer objected to the second runoff election, alleging misrepresentations in union handbills and threats to some employees. We find no substantive or procedural error in the Board's overruling of these objections or in its ruling that the company had unjustifiedly refused to bargain.

The bargaining order is enforced.

1. Furr's Inc. v. N.L.R.B., 350 F.2d 84 (10th Cir. 1965); Surprenant Manufacturing Company v. Alpert, 318 F.2d 396 (1st Cir. 1963); Brown and Root Caribe, Inc., 123 NLRB 1817, 1822 (1959); Pacemaker Corp., 120 NLRB 987, 988 (1958), enforced 260 F.2d 880 (7th Cir. 1958).