**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INTERNATIONAL EQUIPMENT COMPANY, SUBSIDIARY OF DAMON CORPORATION, Respondent.**

No. 71–1234.

United States Court of Appeals, First Circuit.

Heard Dec. 7, 1971.

Jan. 26, 1972.

---

Stephen H. Naiman, Atty., Washington, D. C., with whom Peter G. Nash, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Leonard M. Wagman, Washington D. C., were on brief, for petitioner.

Henry G. Stewart, Boston, Mass., with whom Nutter, McClennen & Fish and John J. Delaney, Jr., Boston, Mass., were on brief, for respondent.

Before McENTEE and COFFIN, Circuit Judges, and WYZANSKI,* Senior District Judge.

McENTEE, Circuit Judge.

This case comes to us on petition of the National Labor Relations Board to enforce an order to bargain. The Board found that the International Equipment Company, subsidiary of Damon Corporation, had violated § 8(a) (1) and (5) of the National Labor Relations Act[1] by refusing to bargain with the certified representative of its employees.[2] The Company has admittedly refused to bargain so that it may litigate issues relating to the underlying representation proceeding.

A representation election was held at the Company's plant in Needham Heights, Massachusetts, on June 15, 1970. On that day the Company requested a postponement of the election because rumors were circulating among the employees that the Company was to blame for the suicide of one John Stewart, a foreman with thirty-two years service, whose death had been reported that morning. This request was denied, and the Union won the election 108 to 52.

The Company objected to the election, alleging (1) that vicious mistruths were circulated by employees acting on behalf of the Union or other employees charging the Company with responsibility for Stewart's death; (2) that the rumors created a general atmosphere of fear and confusion preventing employees from exercising their free and rational choice of bargaining representative; and (3) that the Regional Director abused his discretion in denying the request for a postponement of the election.

Pursuant to the Board's regulations, 29 CFR § 102.69(c), the Regional Director conducted an *ex parte* investigation and issued a Supplemental Decision and Certification of Representative overruling the Company's objections. The Board refused to review this decision on the ground that no substantial issues were raised warranting review. Thus the Regional Director's opinion was adopted by the Board. When the Company refused to bargain, a complaint was filed charging violation of § 8(a) (1) and (5) of the Act. Summary judgment was granted against the Company on the basis that all the issues raised were considered and decided in the representation proceeding. *See, e. g.*, Pittsburgh Plate Glass Co. v. NLRB, 313 U. S. 146, 162, 61 S.Ct. 908, 85 L.Ed. 1251 (1941); NLRB v. Magnesium Casting Co., 427 F.2d 114, 119 (1st Cir. 1970), aff'd, 401 U.S. 137, 91 S.Ct. 599, 27 L. Ed.2d 735 (1971).

The Company urges here the same objections it pressed in both the representation and the unfair labor practice proceedings below. Since the Board ruled without a hearing that these objections did not raise a substantial issue warranting review, the question before us is whether the Company sustained its burden of presenting evidence which prima facie would warrant setting

* Sitting by designation.

1. 29 U.S.C. § 158(a) (1) and (5) (1970).

2. The International Association of Machinists and Aerospace Workers, AFL–CIO.

the election aside. NLRB v. Bata Shoe Co., 377 F.2d 821, 826 (4th Cir.), cert. denied, 389 U.S. 917, 88 S.Ct. 238, 19 L. Ed.2d 265 (1967); NLRB v. O. K. Van Storage, Inc., 297 F.2d 74, 75 (5th Cir. 1961); *see also* NLRB v. Mattison Machine Works, 365 U.S. 123, 81 S.Ct. 434, 5 L.Ed.2d 455 (1961) (per curiam).

The basic facts are not in dispute. John Stewart, a supervisor, committed suicide on June 14, 1970. During the months just prior to his death he had twice been transferred to different supervisory positions within the plant. There was evidence that his health was deteriorating. When the report of his death reached the plant, speculative rumors began to circulate among the employees attributing his death to various causes, viz., that his health was poor, that he had lost a son the previous year, that he had family problems and that he had been pushed around and demoted by the Company. The rumors blaming the Company for his death form the basis of the Company's objections.

The Company contends that these rumors misled employees during the critical period prior to the election. It has, however, failed to meet its burden of making a prima facie showing that employees were misled. *See* Baumritter Corp. v. NLRB, 386 F.2d 117, 120 (1st Cir. 1967); *cf.* NLRB v. Trancoa Chemical Corp., 303 F.2d 456, 461 (1st Cir. 1962). No evidence was offered beyond that which established the existence of the rumors. The Regional Director concluded that one could only speculate about the effect of Stewart's death, and that there was no evidence that the Union or its agents were responsible for the rumors. Concededly, as we noted in Cross Baking Co. v. NLRB, 453 F.2d 1346 (1971) absence of union culpability does not suffice if in fact an atmosphere of fear and coercion existed, and subjective evidence is entirely appropriate to establish it. Here, however, we cannot say that the Board's inferences from the evidence were unwarranted. Nor can we believe that fellow employees were incapable of evaluating the sources and na-ture of rumors circulated as the result of a suicide, especially when there were a number of competing stories each attempting to assign a rational cause to an irrational act. Moreover, the cause of Stewart's suicide was so tangential to the issues in the election that we cannot say the Board erred in concluding that the question was insubstantial and immaterial. *See* NLRB v. A. G. Pollard Co., 393 F.2d 239, 241–242 (1st Cir. 1968); NLRB v. Zelrich Co., 344 F.2d 1011, 1015 (5th Cir. 1965).

Ipsen Industries Division Alco Standard Corp., 180 N.L.R.B. 412 (1969), does not assist the Company here. That case involved union letters creating "a false picture of insensitive treatment of an employee by the employer . . . at the end of a campaign stressing the issue of employee 'security'." Here no evidence was adduced by the Company that employee security was an issue in the campaign and speculative rumors about the cause of a supervisor's suicide need not be accorded the weight of a union letter.

■ The Company's second contention is that the emotional impact of the report of Stewart's death created an atmosphere of confusion which rendered impossible the free and rational choice of a bargaining agent. The short answer to this is that the Board could conclude from the employer's affidavits that the emotional impact of the news was unrelated to any conceivable election issue and that any confusion that transpired related to the cause of his suicide, not to the election. Citations to The Great Atlantic and Pacific Tea Co. [A & P], 120 N.L.R.B. 765 (1958); and Diamond State Poultry Co., 107 N.L.R.B. 3 (1953) are wide of the mark. In the A & P case the principal union organizer was arrested at the polling place moments before the election. Certainly such an event is likely to have an impact on the voters and to confuse them sufficiently to warrant setting the election aside. But in the instant case the Company's affidavits indicate that in the afternoon the plant was quiet with very

little being said about the matter of Stewart's death. This can reasonably be taken to indicate that the emotional impact of his suicide had worn off and that any confusion had abated prior to the 3:00 p. m. election. *Diamond State Poultry* is likewise inapposite because that case involved threats by outsiders shortly before an election. The rumors here cannot be construed as threats or coercion. The Board could reasonably conclude from the evidence presented that they had only a marginal impact on the election, insufficient to warrant setting it aside. *See* NLRB v. El-Ge Potato Chip Co., 427 F.2d 903, 906 (3d Cir. 1970), cert. denied, 401 U.S. 909, 91 S. Ct. 869, 27 L.Ed.2d 807 (1971); NLRB v. Zelrich Co., *supra.*

Finally, in view of what has been said regarding the impact of these rumors, the Company has suffered no prejudice due to the Regional Director's refusal to postpone the election.

The order of the Board will be enforced.