**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**HEAVY LIFT SERVICE, INC., Respondent.**

No. 78–2435.

United States Court of Appeals, Fifth Circuit.

Dec. 5, 1979.

Elliott Moore, Deputy Associate Gen. Counsel, David Zorensky, Michael S. Winer, Sup., John D. Burgoyne, Attys., N. L. R. B., Washington, D. C., for petitioner.

Bruckner, Greene & Manas, Allan A. Bruckner, Miami, Fla., for respondent.

Before THORNBERRY, GEE and HATCHETT, Circuit Judges.

HATCHETT, Circuit Judge.

The National Labor Relations Board (Board) seeks enforcement of its order find-

ing that Heavy Lift Service, Inc. (Company) refused to bargain collectively with the International Longshoremen's Association, Local 1680, AFL–CIO (Union) as the certified bargaining representative of certain Company employees. Sections 8(a)(5) and (1), National Labor Relations Act; 29 U.S.C. sections 158(a)(5) and (1). We enforce the Order.

Pursuant to a Stipulation for Certification upon Consent Election executed by the Company and the Union, a ballot election was held resulting in eleven (11) votes for and ten (10) votes against the Union. The Company timely filed objections to conduct allegedly affecting the results of the election. The objections rested primarily on an incident occurring during a Company meeting held on the day before the election. The meeting was convened by the Company president to persuade the employees to reject the Union as their bargaining representative and to answer employees' questions. Responding to the request for comments, black employee Joe Jones arose and, in a loud and excited voice, called the Company president a "nigger hater" and charged the Company with racially discriminatory practices. Jones specifically charged that the Company was hiring white employees and paying them higher wages than black employees who had seniority. The president denied the charges and explained that because of the greater skill required, heavy equipment operators might start at higher salaries than stevedores who had been employed for several years. At the conclusion of the meeting, another black employee invited all the employees to the Union hall after work to learn of the Union's position. The Company's objections cited this incident and other practices to support the allegation that the Union campaign was based on appeals to racial prejudice and that material misrepresentations of fact vitiated the free-choice of voting employees.

After an administrative investigation of the objections, the regional director recommended that the Board overrule the objections and certify the Union as the exclusive bargaining representative of the employees in the appropriate unit. The Board ordered a hearing before a designated hearing officer on the election objections. Upon the recommendation of the hearing officer, the Board overruled the objections and certified the Union as the bargaining representative of employees in the unit.

A Board complaint was issued when the Company refused to bargain with the Union. In its answer, the Company denied that the Union had requested bargaining and that the Union was a labor organization within the meaning of section 2(5) of the Act. The general counsel then filed a motion for summary judgment. The Company filed its reply to the general counsel's motion and amended its answer affirmatively asserting that the Union had engaged in discriminatory racial practices, disqualifying it from certification under the Act. No affidavits or exhibits were filed in support of this allegation. The Board denied the Company's request for a hearing on its affirmative defense of Union discriminatory practices, on grounds that "mere unsupported allegations" of Union misconduct "are insufficient to raise factual issues warranting a hearing." Because disputed fact issues were raised as to whether the Union had requested bargaining, the Board remanded the case to the regional director for a hearing on that issue. At the hearing, the administrative law judge refused to admit evidence relevant to the affirmative defense of Union discrimination because the Board had rejected the allegation as unsupported, precluding the Company from litigating the issue. The administrative law judge rejected all other Company defenses and found that it had unlawfully refused to bargain with the Union. The Board affirmed the findings and conclusions of the administrative law judge and adopted his recommended order.

In opposition to enforcement, the Company presents two issues: (I) Whether the Board erred in adopting the administrative law judge's findings and conclusions concerning the election objections; and, (II) Whether the Board improperly foreclosed litigation of the defense of Union discrimination.

## I.

The Company maintains that on the factual record as a whole the Board's decision is not legally justified. Its major dispute is with the Board finding that the election was not fatally injected with racial prejudice and material misrepresentation. There is, however, substantial record evidence to support the Board's finding. *See, National Labor Relations Board v. Allis-Chalmers Corp.*, 601 F.2d 870 (5th Cir. 1979).

In reviewing the Board's decision, the burden is on the objecting party to demonstrate that the election was not fairly conducted. *Contract Knitter, Inc. v. N. L. R. B.*, 545 F.2d 967 (5th Cir. 1977); *National Labor Relations Board v. Mattison Machine Works*, 365 U.S. 123, 81 S.Ct. 434, 5 L.Ed.2d 455 (1961). Moreover, the Board's long experience in representation matters requires us to give special deference to its decisions regarding the effect of challenged conduct on the results of an election. *National Labor Relations Board v. Leatherwood Drilling Co.*, 513 F.2d 270 (5th Cir. 1975). There is no evidence in the record to show that the employee who complained at the pre-election Company meeting was an agent of the Union or authorized to speak on its behalf. Jones testified that he had never held any office in the Union, nor had he been given authority to act in any Union capacity. The Union president confirmed this testimony without contradiction. Evidence showed that Jones had attended no more than three of the Union meetings prior to the election. There was no evidence to demonstrate that Jones's comments were ratified or condoned by the Union. On this record, the hearing officer found that Jones was not acting as an agent of the Union. The record supports that finding.

We have held that where "conduct [is] not attributable to the opposing party [it] cannot be relied upon to set aside an election" unless it is so "coercive and disruptive . . . that a free expression of choice of representation is impossible." *Federal Electric Corporation v. N. L. R. B.*, 539 F.2d 1043, 1044 (5th Cir. 1976); *Bush Hog Inc. v. N. L. R. B.*, 420 F.2d 1266 (5th Cir. 1969).

We agree with the Board that Jones's remarks, immediately denied and rebutted by the Company president, under all the circumstances, cannot be said to have "interfered with the employees' exercise of free choice to such an extent that they materially affected the results of the election." *National Labor Relations Board v. Golden Age Beverage Co.*, 415 F.2d 26, 30 (5th Cir. 1969); *see, National Labor Relations Board v. Allis-Chalmers Corp.* at 872 n.3.

## II.

The administrative law judge cited two reasons for refusing to hear the Company's affirmative defense of racially discriminatory Union practices. First, the Board's previous order denied the Company's request for a hearing on the issue, because the allegation was not supported by sufficient evidence to overcome a motion for summary judgment. Second, the Company had failed to raise the issue in a prior representation proceeding. The administrative law judge found that absent newly discovered or previously unavailable evidence, the Company could not relitigate issues previously determined in the representation case.

The Board adopted the administrative law judge's decision in full and added a third justification for rejecting the evidence. The Board stated in its final order that it "is not under a constitutional mandate to consider allegations about a Union's discriminatory practices in either a representation proceeding or when raised by a Respondent as an affirmative defense to a complaint charging it with violating the Act by refusing to bargain with the collective-bargaining representative of its employees." In support of its position, the Board cited *Handy Andy, Inc.*, 228 NLRB No. 59 (1977) and *Bell & Howell Co.*, 230 NLRB No. 57 (1977).

We affirm on this issue, but only for the first reason expressed by the administrative law judge. A motion for summary judgment puts adverse parties to the test of their allegations prior to a full evidentiary hearing. As the Board noted in its original

order denying a hearing on the Union discrimination charges, "mere unsupported allegations of the Union's having engaged in such conduct, without more, are insufficient to raise factual issues warranting a hearing." In its affirmative defense to the motion for summary judgment, the Company failed to support its allegations with the minimal evidence necessary to show that a factual issue existed to necessitate a hearing. Without a "properly substantiated" prima facie showing of racial discrimination by the Union, the Company was not entitled to a hearing on this affirmative defense. *National Labor Relations Board v. Sumter Plywood Corp.*, 535 F.2d 917 (5th Cir. 1976); *National Labor Relations Board v. Bancroft Manufacturing Co., Inc.*, 516 F.2d 436 (5th Cir. 1975). As we held in *Sumter*:

> . . . . this Court will deny enforcement of a Board order on the grounds that the Board improperly refused a hearing on whether the union was racially discriminatory only when the employer has proffered specific evidence sufficient to demonstrate a pattern of racially discriminatory behavior by the union which would support a finding of a definite propensity for racially unfair representation.

*National Labor Relations Board v. Sumter Plywood Corp.*, at 931. Had the Company's allegations been supported by specific evidence as required in *Sumter*, the claim of invidious racial discrimination would properly have been brought before the Board at the proceedings on the refusal to bargain. *See, National Labor Relations Board v. Mansion House Center Management Corp.*, 473 F.2d 471 (8th Cir. 1973); *National Labor Relations Board v. Bancroft Manufacturing Co., Inc.*, at 446; *National Labor Relations Board v. Sumter Plywood Corp.*, at 931.

For the above reasons, we enforce the Board's order.

ENFORCED.